**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**BETTY DARLENE BARTOS,**

      Plaintiff,

v.                                            **CIVIL ACTION NO.: 1:16-CV-167
(GROH)**

**PDC ENERGY, INC.,**

      Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Currently pending before the Court are the parties' cross motions for summary judgment. Specifically, on May 24, 2017, Betty Darlene Bartos ("Plaintiff") filed her Motion for Partial Summary Judgment. ECF No. 37. PDC Energy, Inc. ("Defendant"), filed its Motion for Summary Judgment on May 26, 2017. ECF No. 39. The Defendant filed a Response on June 14, 2017. ECF No. 41. The Plaintiff filed her Response on June 16, 2017. ECF No. 42. Neither party filed a reply. As more fully explained below, the Defendant's Motion for Summary Judgment is granted in part and denied in part, and the Plaintiff's Motion for Partial Summary Judgement is denied.

**I. INTRODUCTION**

This action resulted from Defendant-employer's termination of the Plaintiff's employment. In her complaint, the Plaintiff alleges age discrimination; retaliation and discrimination in violation of the family medical leave act ("FMLA"); discrimination in violation of the West Virginia Human Rights Act ("WVHRA") and retaliatory discharge in

1

violation of public policy. The Plaintiff filed her complaint in the Circuit Court of Harrison County, but on August 4, 2014, the Defendant removed the case. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367 and 1441.

## II. BACKGROUND

The Plaintiff was employed by the Defendant from 1985 until 2014, spending most of her time there as a supervisor of revenue in the accounts receivable department of the company's Bridgeport, West Virginia, office. In 2013, the Defendant began a planned divestiture of certain assets, known within the company as Project Small Ball, and as a result, it determined that a reduction in force was necessary. Fourteen employees, including the Plaintiff, were terminated. Twelve of the fourteen terminated employees were over the age of forty, even though the Defendant's representatives from its human resources department stated the age span of its employees is balanced between younger and older individuals.[1]

## III. STANDARD OF REVIEW

Pursuant to Rule 56, Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the

---

[1] For purposes of these motions, the Court did not rely upon the Plaintiff's statistical arguments because they fail to present all of the relevant data required to reach a reasoned conclusion. Namely, the Plaintiff offered no statistical evidence regarding the age of employees at the Defendant's Bridgeport office who comprised the pool from which the Defendant chose the employees who were terminated. The relevant inquiry is not that 85.714% of the employees terminated were over forty years old, rather, it is that number compared with the percentage of employees over forty who made up the pool from which the Defendant chose to terminate. For example, if 85.714% of the Defendant's employees at the Bridgeport office were over forty years of age when it selected the terminated employees, then it would be expected that twelve of fourteen employees terminated were over forty. However, if the pool of employees contained protected members at a number significantly inconsistent statistically with those employees who were terminated, it could support the Plaintiff's argument.

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 323-35; Anderson, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (quotations omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

### IV. APPLICABLE LAW

The WVHRA prohibits employers from discriminating against any individual with regard to "compensation, hire, tenure, terms, conditions or privileges of employment." W. Va. Code § 5-11-9(c). Discrimination "means to exclude from, or fail or refuse to extend to, a person equal opportunities because of . . . age . . . ," which is defined as "the age of forty or above." W. Va. Code §§ 5-11-3(h), (k). Discrimination claims brought under the WVHRA are governed by the burden-shifting framework of Title VII of the Civil Rights

Act of 1964, laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Human Rights Comm'n, 309 S.E.2d 342, 352 (W. Va. 1983) (reaffirming use of the McDonnell Douglas standard in West Virginia).

A plaintiff must establish the following to establish a prima facie case of unlawful employment discrimination: (1) she is a member of a protected class; (2) the employer made an adverse employment decision affecting her; and (3) but for her protected status, the employer would not have made the adverse decision. Syl. pt. 3, Conaway v. E. Associated Coal Corp., 358 S.E.2d 423, 429 (W. Va. 1986). To prove the third element of the prima facie case, a plaintiff must "show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." Id. at 429-30. The plaintiff can establish this link by demonstrating *inter alia* unequal or disparate treatment between members of the protected class and others; the elimination of legitimate reasons for the decision or statistics showing that members of the protected class received substantially worse treatment than others. Id. at 430.

"Pursuant to the 'substantially younger' rule contained in O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 . . . (1996), a plaintiff who is age forty or older, pursuing an age discrimination claim under the [WVHRA], may satisfy the third prong of [Conaway] by presenting evidence that [she] was replaced by a 'substantially younger' employee." Syl. pt. 4 Knotts v. Grafton City Hosp., 786 S.E.2d 188 (W. Va. 2016). Alternatively, a plaintiff may also satisfy the third prong of Conaway "by presenting evidence that a

4

'substantially younger' employee, who engaged in the same or similar conduct for which the plaintiff faced an adverse employment decision, received more favorable treatment." Id. at Syl. pt. 5.

However, "[t]he 'but for' test of discriminatory motive in [Conaway] is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination." Syl. pt. 2, Barefoot v. Sundale Nursing Home, 457 S.E.2d 152, 156 (W. Va. 1995).

Upon establishing a prima facie case, the burden shifts to the employer to provide a non-discriminatory reason for the plaintiff's dismissal. Conaway, 358 S.E.2d 423, 430. "The reason need not be a particularly good one. It need not be one which the judge or jury would have acted upon. The reason can be any other reason except that the plaintiff was a member of a protected class." Id. After the employer explains its decision, the employee may rebut the employer's legitimate, non-discriminatory reason. Id. The burden then shifts back to the plaintiff to prove that the facially legitimate reason given by the employer for the employment decision was merely pretext for a discriminatory motive.

In Kanawha Valley Regional Transp. Auth. v. West Virginia Human Rights Comm'n, 383 S.E.2d 857 (W. Va. 1989), the Supreme Court of Appeals of West Virginia ("SCAWV") first considered disparate-treatment age discrimination against the backdrop of an employer's economically-driven reduction-in-force. Id. at 859. The SCAWV relied upon the federal circuit courts to articulate the appropriate approach for West Virginia courts in this context. Notably, it explained that "[i]n a reduction-in-force case, what creates the presumption of discrimination is not the discharge itself, but rather the discharge coupled with the retention of younger employees." Id. (quoting Thornborough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 644 (5th Cir. 1985). In these cases, it

5

is expected that qualified employees will be terminated, and therefore, "the fact that qualified, older employees are laid off is not inherently suspicious and does not in itself warrant shifting the burden of production to the employer to justify his actions." Id. at 860. "Instead, what is suspicious in reduction-in-force cases is that the employer fired a qualified, older employee but retained younger ones." Id. Thus, "[t]he question in this context is not why members of the group were discharged or whether they were meeting performance expectations, but whether the particular employees were selected for inclusion on the list for discharge because of their age." Mitchell v. Data General Corp., 12 F.3d 1310, 1315 (4th Cir. 1993).

The SCAWV laid out a basic formula utilized across various federal circuit courts[2] for use in reduction-in-force age discrimination cases: "(1) that the claimant was a member of the protected class (at least forty years of age); (2) that a negative action was taken (that she was fired); (3) she was qualified; and (4) that others not in the protected class were treated more favorably." Kanawha Valley, 383 S.E.2d at 860 (internal citations omitted). The SCAWV also restated the "general test of a *prima facie* case of disparate treatment employment discrimination" that it originally pronounced in Conoway. See Syl. pt. 3, supra. However, the SCAWV cautioned that its "formulation in Conaway was not

---

[2] In a decision published four years after Kanawha Valley, the Fourth Circuit explained that
> to target age discrimination in a reduction-in-force context where the selection of employees for discharge is purportedly made on the basis of relative performance, even though all employees were meeting existing performance standards, a prima facie case may be established by showing that: (1) the employee was protected by the ADEA; (2) he was selected for discharge from a larger group of candidates; (3) he was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a level lower than that at which he was performing.

Mitchell v. Data General Corp., 12 F.3d 1310, 1315 (4th Cir. 1993) (citing Duke v. Uniroyal, Inc., 928 F.2d 1413 (4th Cir. 1991)).

6

intended to create a more narrow standard of analysis in discrimination cases than is undertaken in the federal courts." Kanawha Valley Regional Transp. Auth. at 860.

"Although the proof scheme is staged with shifting burdens, [age] discrimination cases may nevertheless be evaluated under established summary judgment principles." Mitchell, 12 F.3d at 1315. Indeed, Rule 56 "provides a procedure with which to bypass a trial when the fact resolution process of trial would prove to be of no use in the disposition of the case." Id. "In short, the summary judgment procedure allows the court to forecast the proof at trial to determine whether consequential facts are in dispute, and if not, to resolve the case without a trial." Id. at 1316.

Just as discrimination claims brought under the WVHRA and Title VII, "FMLA retaliation claims are analyzed under the McDonnell Douglas framework." Howell v. Bluefield Regional Medical Center, Inc., Civil Action No. 1:07-0112, 2008 WL 2543448, at *2 (S.D. W. Va. 2008). "Under the FMLA, 29 U.S.C. § 2615(a)(2), an employee has a cause of action against an employer who discriminates and/or retaliates against him or her for 'opposing any practice made unlawful' by the Act.'" Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). To make a prima facie case of FMLA retaliation, "the plaintiff must show that he engaged in a protected activity, that the employer took adverse action against him, and that the adverse action was casually connected to the plaintiff's protected activity." Id. (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)). Assuming the plaintiff successfully establishes a prima facie case, the defendant then may offer a nondiscriminatory reason for the plaintiff's termination. Once a nondiscriminatory reason is proffered, the plaintiff bears the ultimate burden to establish that the proffered explanation is actually pretext for FMLA retaliation. See Howell, at *2.

Finally, retaliatory discharge in violation of public policy has evolved as an exception to West Virginia's at-will employment scheme. See Swears v. R.M. Roach & Sons, Inc., 696 S.E.2d 1, 5-6 (W. Va. 2010) (citing Wright v. Standard Ultramarine & Color Co., 90 S.E.2d 459 (W. Va. 1955)) (describing its evolution). The SCAWV first recognized this exception in Harless v. First National Bank, holding that "where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee" notwithstanding the broader at-will scheme. Syl., 246 S.E.2d 270, 271 (1978).

Without an alleged violation of some *substantial* West Virginia public policy, a cause of action for retaliatory discharge as described in Harless cannot survive. Whether a substantial public policy exists is a question of law for the court to decide. Page v. Columbia Natural Res., 480 S.E.2d 817, 823 (W. Va. 1996). Although "established precepts in [West Virginia's] constitution, legislative enactments, legislatively approved regulations, and judicial opinions" may assist in determining whether a substantial public policy exists, Harless claims "are generally based on a public policy articulated by the legislature." Birthisel v. Tri–Cities Health Servs. Corp., 424 S.E.2d 606, 612 (W. Va. 1992); Swears, 696 S.E.2d 1 (citing Shell v. Metro. Life Ins. Co., 396 S.E.2d 174, 180 (W. Va. 1990)). The SCAWV has been clear: the cited public policy must be *substantial*. Feliciano v. 7–Eleven, Inc., 559 S.E.2d 713, 718 (W. Va. 2001).

As noted by other Courts in this District, the Fourth Circuit "has specifically declined to expand the Harless cause of action by recognizing novel theories of substantial public policy absent a clear statement from the Supreme Court of Appeals of West Virginia."

8

Frohnapfel v. ArcelorMittal Weirton LLC, 100 F. Supp. 3d 556, 563-64 (N.D. W. Va. 2015) (citing Tritle v. Crown Airways, Inc._, 928 F.2d 81, 84-85 (4th Cir. 1990)).

At least one federal court in West Virginia has held that "the FMLA provides a substantial public policy that could support a West Virginia common law claim for retaliatory discharge in violation of public policy." Vandevander v. Verizon Wireless, LLC, 149 F. Supp. 3d 724, 729 (S.D. W. Va. 2016). Indeed, the FMLA itself does not preempt a state-law claim. Id. at 728; see also Davis v. Cabela's Inc., Civil Action No. 5:07CV88, 2008 WL 183717, at *2 (N.D. W. Va. 2008). Further, because "FMLA's requirements provide specific guidance to a reasonable person, and subjecting an employer to liability based on violating the FMLA would not expose the employer to liability for violating a standard too general to provide any specific guidance or so vague that it is subject to different interpretations[,]" federal courts in this State have held that a plaintiff may rely upon the FMLA as a substantial West Virginia public policy when pleading retaliatory discharge pursuant to Harless and its progeny. Vandevander, 149 F. Supp. 3d at 730.

## V. ANALYSIS

Upon review and consideration of the record, this Court finds that the Plaintiff has presented evidence sufficient to raise genuine issues of material fact as to three grounds listed in her complaint. Specifically, the Court finds that the Plaintiff's claims for age discrimination; retaliation and discrimination in violation of the family medical leave act and retaliatory discharge in violation of public policy must survive the Defendant's motion for summary judgment.

The Plaintiff has advanced enough evidence, *infra*, to adequately establish a prima facie case of age discrimination and retaliation in violation of FMLA. Viewing the facts

9

and inferences in the light most favorable to the Plaintiff, there remain genuine issues of material fact regarding the decision to terminate her position. Thus, the Defendant's motion for summary judgment should be denied, except with respect to the Plaintiff's claim for disability discrimination in violation of the WVHRA.

The Plaintiff clearly satisfies the first two prongs of the McDonnell Douglas test for age discrimination: She is a member of a protected class pursuant to the WVHRA because she is over forty years of age; and the Defendant made an adverse employment decision affecting her when it terminated her position. The Defendant contests the third prong: that but for the Plaintiff's age she would not have been terminated.

"[B]ecause discrimination is essentially an element of the mind, there will normally be very little, if any, direct evidence available. Direct evidence is not, however, necessary." W. Va. Inst. of Tech. v. W. Va. Human Rights Comm'n, 383 S.E.2d 490, 495 (W. Va. 1989). Instead, a plaintiff must offer circumstantial evidence that "would sufficiently link the employer's decision and the [plaintiff's] status as a member of a protected class so as to give rise to an inference that the employment-related decision was based upon an unlawful discriminatory criterion." Id.

The Court finds that the Plaintiff has presented adequate evidence to satisfy the third prong of McDonnell Douglass, and therefore, she has established a prima facie case of age discrimination. The Court also finds the "basic formula in reduction-in-force age discrimination cases" articulated by the SCAWV in Kanawha Valley quite instructive. Therein, the first two factors mirror McDonnell Douglas and Conaway, but the third and fourth factors are altered for cases factually similar to the one before this Court.

Specifically, a plaintiff must show "she was qualified" and "that others not in the protected class were treated more favorably." 383 S.E.2d 857, 860.

The Defendant has not put the Plaintiff's job performance, qualifications, or ability to perform in question. The Plaintiff's performance evaluations indicate that she "met expectations." See ECF No. 37-10. Thus, the Court finds she was qualified.

Viewing facts and inferences in a light most favorable to the Plaintiff, the Court also finds that others not in the protected class—individuals under forty years of age—were treated more favorably. The Plaintiff's direct supervisor, Melissa Del Rio, testified that the only employee who reported directly to her who was terminated was the Plaintiff. See ECF No. 37-9. However, other, younger employees within the same department were transferred to new jobs within the company. Id. In fact, employees who previously reported to the Plaintiff were transferred to new jobs. The Defendant simultaneously determined that the Plaintiff was both "overqualified" and not as good of a "fit" for the positions to which other employees were transferred. Notably, this is an area that is undeveloped in the record before this Court. Specifically, there are three employees for the Defendant, Messrs. Jedamski, Meyers and Williams, who were involved in making the decision to terminate the Plaintiff. However, their depositions appear to have been taken after the parties filed the instant motions. The Court notes that neither party asked for an amended scheduling order or extension to file dispositive motions. Because these individuals apparently were directly involved in making reduction in force decisions associated with project small ball, the Court approached these motions for summary judgment with some reservations.

Although somewhat concerned by the lack of potential witnesses, the Court would still arrive at the same conclusion without factoring its above-outlined concerns. John Delawder, who ultimately made the decision to terminate the Plaintiff, testified that he did not look at the Plaintiff's performance evaluations or consider her salary when making the final decision to terminate her. See ECF No. 37-4. Contrary to the Defendant's assertion in its response, the plaintiff's most recent performance evaluation score placed her squarely in the middle of her department's employees. Mr. Delawder also testified that he lacked "the professional knowledge of accounting operations to make professional competency determinations." Id. at 10. Ms. Del Rio, the Plaintiff's direct supervisor, testified that she was not consulted prior to the Defendant's decision regarding who would be terminated. ECF No. 37-9 at 3.

Mr. Delawder also explained that the Plaintiff likely was not considered for transfer to another position, which was ultimately given to a substantially younger employee originally slated to be terminated, because "from a business standpoint, when you afford opportunities to more senior people in more junior positions, they typically become bored and frustrated." Id. at 9. The Plaintiff has adequately advanced a prima facie case of age discrimination under the WVHRA.

Next, the Defendant is given the chance to offer some non-discriminatory reason for the plaintiff's dismissal. Conaway, 358 S.E.2d 423, 430. It does not have to be a good reason or one that this Court would have acted upon, so long as it is any other reason except that she was terminated because she belonged to a protected class. Id. Here, the Defendant asserts that the Plaintiff was terminated as part of a reduction in force

resulting from the sale of 3,000 wells, which directly impacted the Plaintiff's "main areas of responsibility".[3]  ECF No. 40 at 4.

Because the Defendant's purported reason for terminating the Plaintiff is facially nondiscriminatory, the Plaintiff may rebut the offered reason.  See Conaway, 358 S.E.2d 423, 430.  Thus, the burden shifts back to the Plaintiff to prove that the facially legitimate reason given by the Defendant is merely pretext for a discriminatory motive.  Id.

In the case *sub judice*, the Defendant employed the Plaintiff for nearly thirty years. Around twenty years into Plaintiff's tenure, the Defendant acquired approximately 3,000 wells as part of a joint venture, which was structured as a five-year model the Defendant labeled "project small ball."  In other words, the Defendant acquired assets sometime around 2007 with the intention, at the time of purchase, to sell the same roughly five years later for a profit.  The Defendant did exactly that.  This pre-planned sale came well after the Plaintiff's employment began.  The Plaintiff was not hired to work on project small ball, or in some other way reassigned as a result of its acquisition.  To be clear, the Defendant did work in the accounting department for the Defendant for two decades before project small ball even began, yet it argues that once those assets were sold, it no longer had any need for or place to use the Plaintiff.

The Plaintiff's direct supervisor, who the Plaintiff trained, was never asked whether she believed there was somewhere else in the company that the Plaintiff would be a good

---

[3] In its response to the Plaintiff's motion for partial summary judgment, the Defendant claims the Plaintiff's position was eliminated "because: 1) Ms. Bartos'[s] job duties related primarily to assets that PDC energy sold . . . and 2) Ms. Bartos was performing toward the bottom of the group of employees who reported to her direct supervisor."  ECF No. 41 at 3.  Although the Defendant mentioned the Plaintiff's performance scores briefly in its memorandum in support of its motion for summary judgment, it is clear from the record that the scores are of no moment to the Defendant explaining its decision because Mr. Delawder testified that he did not look at the Plaintiff's prior performance evaluations as part of his decision to terminate her position. ECF No. 37-4 at 5.  Furthermore, the Plaintiff scored higher than John Monti, a younger employee who was transferred and not terminated by the Defendant.

13

fit, yet Mr. Delawder testified that the employees, who were younger than the Plaintiff, taken off the list to be terminated and instead transferred within the company "were better fits for those positions." ECF No. 37-9 at 3; 37-4 at 10.

Further, within a few months of the Plaintiff's termination, the Defendant hired[4] Sabrina Benedum as a senior revenue accountant working directly for Melissa Del Rio—the Plaintiff's former supervisor. See ECF No. 37-5 at 3; 37-9 at 6. Whether Ms. Benedum was actually hired as a replacement for the Plaintiff is a material fact that is hotly in dispute. Neither party has presented evidence, satisfactory to this Court, to establish whether Ms. Benedum replaced the Plaintiff as an undisputed fact. Thus, it remains a material fact in dispute, amongst others, which must be resolved by a jury.

In the context of the Plaintiff's motion for summary judgment, although the Court is skeptical of the Defendant's explanation for the Plaintiff's termination, it must view the facts and inference in light most favorable to the Defendant. In so doing, a reasonable juror could find that the Defendant truly did not need an employee with the Plaintiff's specific skill set but, regardless of sage wisdom or common sense, chose to terminate her position and hire a new, younger employee with a different skill set, regardless of age.

Regarding the Plaintiff's claim for retaliation and discrimination in violation of FMLA, it is undisputed that the Defendant decided to change the Plaintiff's job title and functional responsibilities *while* she was on leave pursuant to the FMLA. ECF No. 37-6 at 2. Upon returning from leave, the Plaintiff's title and responsibilities were "no longer that of a supervisor." Id. The Court finds that the Plaintiff has sufficiently shown a prima

---

[4] In fact, the Defendant continued hiring new employees after the sale of project small ball, and at Mr. Delawder's deposition, he testified that the company presently has the highest level of employees in its history. ECF No. 37-4 at 2.

14

facie case of FMLA retaliation.  Moreover, there remains a genuine dispute at to whether the changes made to the Plaintiff's employment rendered it not an equivalent position. Further, viewing facts and inferences in favor of the Plaintiff, the Defendant has hardly advanced an argument to adequately dismiss this ground on summary judgment.[5]

Plaintiff's third ground, discrimination under the WVHRA on the basis of disability, even taken in a light most favorable to the Plaintiff, cannot survive summary judgment. In response to the Defendant's motion, the Plaintiff cites to one SCAWV case and the Defendant's memorandum in support of its motion for summary judgment, while asserting that she has "proven a prima facie case of disability discrimination under the WVHRA." See ECF No. 42 at 8-9.

The Plaintiff has not met her burden of establishing a prima facie case because there is absolutely no evidence in the record before this Court from which an inference of unlawful discrimination arises.  In her response, the Plaintiff points to no "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that support her bare assertion that she has proven a prima facie case of disability discrimination.  Fed. R. Civ. P. 56(c)(1)(A).  Moreover, "conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case."  Thompson, 312 F.3d 645, 649 (quotations omitted). Upon review of the record, even though the Court need not consider anything other than

---

[5] Although the Defendant has failed to provide enough evidence and argument to support its motion for summary judgment, counsel for the Plaintiff is cautioned that she barely supported her response, pursuant to Rule 56(c)(1), sufficiently for the Court to find that summary judgment is not appropriate.  To be sure, Rule 56(c)(3) provides that the Court "*need* consider only the *cited materials*, but it may consider other materials in the record."  (emphasis added).  With regard to this ground, the Court considered the entire record in reaching its conclusion, as the materials cited by the Plaintiff were not enough.

materials cited, the Court finds that the Defendant is entitled to summary judgment on the Plaintiff's third ground: Disability discrimination in violation of the WVHRA.

Finally, the Court finds that summary judgment is inappropriate for the Plaintiff's fourth ground—retaliatory discharge in violation of public policy. The Defendant's *sole* argument as to why this ground should not advance beyond summary judgment is that the Plaintiff failed to establish the existence of a substantial public policy under West Virginia law. The Plaintiff responds that violation of FMLA also violates substantial public policy under state law.

This Court finds the finely articulated analysis by its sister district in Vandevander v. Verizon Wireless, LLC, persuasive, and it adopts the same. 149 F. Supp. 3d 724, 729-30 (S.D. W. Va. 2016) (finding that "the FMLA provides a substantial public policy that could support a West Virginia common law claim for retaliatory discharge in violation of public policy" because, *inter alia*, "[t]he FMLA's requirements provide specific guidance to a reasonable person, and subjecting an employer to liability based on violating the FMLA would not expose the employer to liability for violating a standard too general to provide any specific guidance or so vague that it is subject to different interpretations"). Accordingly, the Plaintiff's ground for retaliatory discharge in violation of public policy survives the Defendant's motion for summary judgment.

## VI. CONCLUSION

Therefore, based upon the foregoing, the Court hereby **ORDERS** that the Defendant's Motion for Summary Judgement [ECF No. 39] is **GRANTED IN PART**, as to Plaintiff's Count III: Discrimination in violation of the WVHRA, and **DENIED IN PART** regarding the Plaintiff's remaining three counts. The Plaintiff's Motion for Partial Summary

Judgment [ECF No. 37] is **DENIED**; however, the Court finds that the Plaintiff has established a prima facie case of age discrimination. Accordingly, the remaining counts, one, two and four, within the Plaintiff's complaint shall proceed to trial as scheduled.

Furthermore, the Court entered a Scheduling Order in this matter on September 22, 2016, which provided a deadline for submitting motions in limine, voir dire, jury instructions, verdict forms and Rule 26(a)(3) disclosures. The deadline for all of these filings has passed, yet neither party has submitted **any** of these routine pretrial filings. Accordingly, the Court hereby **ORDERS**, pursuant to Federal Rule of Civil Procedure 16(f)(1)(C), that both parties are hereby **PROHIBITED** from submitting **ANY** of the abovementioned filings, except 26(a)(3) disclosures, beyond their long-passed deadlines.

The parties are further **ORDERED** to submit their 26(a)(3) pretrial disclosures to the Court by August 1, 2017. Failure to comply with this Court's Orders in the future will most likely result in further sanctions.

The Clerk of Court is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED**: July 28, 2017

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE